**Rodney D. BARNHILL, Petitioner–Appellant,**

v.

**Mary FLANNIGAN, and Attorney General of the State of Illinois, Respondents–Appellees.**

**No. 94–1326.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1994.

Decided Dec. 14, 1994.

---

Jack A. Strellis (argued), Strellis, Faulbaum & Field, Waterloo, IL, for petitioner-appellant.

Penelope Moutoussamy George (argued), Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondents-appellees.

Before POSNER, Chief Judge,
ESCHBACH, and RIPPLE, Circuit Judges.

ESCHBACH, Circuit Judge.

Petitioner Rodney D. Barnhill ("Barnhill"), an Illinois state prisoner, appeals the district court's denial of his petition for writ of habeas corpus. 28 U.S.C. § 2254. In his petition, Barnhill attacked the circumstances of his plea, the effectiveness of his trial and appellate counsel, the constitutionality of the statute used to enhance his sentence, and the application of the statute to this case. The district court rejected each of these claims. We affirm.

I.

On July 9, 1986, Barnhill entered a plea of guilty but mentally ill to the charge of murder.[1] At the hearing in which Barnhill tendered his plea, the state trial court advised the defendant of the charge against him and asked him if he understood this charge. Barnhill responded that he did. The court then proceeded to explain all the possible punishments for the offense of murder, including the possibility of a term of natural life imprisonment. The court asked Barnhill if he understood this range of penalties and he answered in the affirmative. The court inquired about his physical health and found

that he was presently under medication for his mental illness, but that this did not interfere with his ability to function. Barnhill also disclosed that he had attended high school until the eleventh grade in a special education program, but that he could not read or write. The court informed Barnhill of his constitutional rights and proceeded to explain them until Barnhill stated that he understood them. At the conclusion of his examination of Barnhill, the court asked him if he had been compelled "in any way" to enter his guilty plea and the court found that he had entered the plea freely and voluntarily. Before accepting the plea, the court required the state to put on evidence to show that the defendant did in fact commit the crime. John Moore, an investigator for the sheriff's department, testified as to Barnhill's confession and the corroborating physical evidence. Barnhill admitted that Moore's testimony was substantially true. Finally, the court considered the reports of two psychiatrists and one psychologist establishing Barnhill's mental illness, but confirming that he was capable of understanding the charges against him and assisting in his defense. At the sentencing hearing, the court found Barnhill's actions to be exceptionally heinous and exceptionally brutal, exhibiting wanton cruelty on Barnhill's part,[2] and on July 30, 1986, the judge imposed a sentence of natural life imprisonment pursuant to Ill.Rev. Stat. ch. 38, para. 1005–8–1(a)(1)(b) (1989).

On August 7, 1986, Barnhill filed a motion to withdraw his plea, which was denied on November 30, 1987. Barnhill appealed raising four issues: (1) whether the trial court complied with Illinois Supreme Court Rule 402(b), requiring the judge to inquire as to whether the defendant was promised anything in return for his plea, when it accepted his plea; (2) whether the plea must be vacated because Barnhill was promised he would serve his sentence in a mental facility rather than prison; (3) whether the trial court abused its discretion in imposing a sentence

---

1. These facts are primarily taken from the findings in the Illinois Court of Appeals, *People v. Barnhill*, 188 Ill.App.3d 299, 135 Ill.Dec. 627, 543 N.E.2d 1374 (1989), which are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).

2. According to Barnhill's own admission, and the corroborating testimony of the police, Barnhill strangled Ruth Ann Boner with his hands, placed his foot on her neck, and then took a wire clothes hanger and garrotted her.

of natural life; and (4) whether the statute under which Barnhill was sentenced was unconstitutionally vague. In *People v. Barnhill*, 188 Ill.App.3d 299, 135 Ill.Dec. 627, 543 N.E.2d 1374 (1989), the Illinois Court of Appeals considered these issues and affirmed the trial court. A petition for leave to appeal to the Illinois Supreme Court was filed raising only the issue of the constitutionality of Barnhill's sentence. That petition was denied at 129 Ill.2d 566, 140 Ill.Dec. 674, 550 N.E.2d 559 (1990).

On July 11, 1991, Barnhill filed the instant petition for writ of habeas corpus in federal district court. He raised the exact four issues which had been raised before the Illinois Court of Appeals. On January 22, 1993, the district court granted leave for Barnhill to add an additional ground that he was deprived of effective assistance of trial, post-trial and appellate counsel. The district court then denied the petition on April 27, 1993 and denied Barnhill's motion to vacate the judgment on January 7, 1994. Barnhill filed a timely notice of appeal pursuant to 28 U.S.C. § 2253.

## II.

■ Barnhill raises three issues on this appeal: the deprivation of effective assistance of trial, post-trial, appellate, and supreme court counsel; the unconstitutionality of the statute under which he was sentenced; and the inappropriateness of applying that statute to this case. Questions of law are reviewed *de novo*. *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir.1994). Before considering a petition for a writ of habeas corpus on its merits, we must determine if it is properly before this court. A prisoner who seeks federal habeas relief must ordinarily raise his federal claims in state court before proceeding to federal court or he will be procedurally defaulted from presenting them. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Whipple v. Duckworth*, 957 F.2d 418, 420 (7th Cir.), cert.

*denied,* —— U.S. ——, 113 S.Ct. 218, 121 L.Ed.2d 157 (1992).

■ Barnhill concedes that he is procedurally defaulted from presenting all of the claims he raises except the ineffectiveness of supreme court counsel and the unconstitutionality of the statute under which he was sentenced. Barnhill contends that his procedural default may be excused. Such default may be excused if a petitioner can show cause for his procedural default, and prejudice resulting from the alleged constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Freeman v. Lane*, 962 F.2d 1252, 1256 (7th Cir.1992). In rare cases, a petitioner may be able to escape such default if a denial of his petition would cause a gross miscarriage of justice. *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986); *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir.1988), *cert. denied*, 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). Barnhill asserts that he has established the requisite cause and prejudice to allow us to hear his claims of ineffective assistance of counsel.[3]

### A. Ineffective Assistance of Counsel

■ Barnhill fails to establish the requisite cause and prejudice which would allow us to excuse the procedural default of his ineffective assistance of counsel claims. The "cause" he offers for the failure of his appellate counsel to raise the ineffectiveness of his trial counsel is that it was against appellate counsel's interest to question the effectiveness of a fellow public defender. Additionally, Barnhill claims that appellate counsel failed to raise the ineffectiveness of his trial counsel because appellate counsel was equally incompetent. Neither of these allegations are sufficiently established to provide cause or prejudice for his procedural default.

■ First, Barnhill has presented no actual conflict of interest which would be cause for appellate counsel's failure to raise trial counsel's ineffectiveness. Generally, an at-

---

**3.** Barnhill does not even attempt to establish cause or prejudice for his failure to preserve his third claim that his sentence to a term of natural life imprisonment was an abuse of discretion.

The issue was raised before the court of appeals, but was not raised before the Illinois Supreme Court. Thus, it was procedurally defaulted and we need go no further in examining its merits.

torney's actual conflict of interest can be a sufficient cause to excuse a procedural default. *See Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, ——, 64 L.Ed.2d 333 (1980); *Riner v. Owens,* 764 F.2d 1253, 1257 (7th Cir.1985), *cert. denied,* 475 U.S. 1055, 106 S.Ct. 1282, 89 L.Ed.2d 589 (1986). This is especially true where the petitioner is represented by the same attorney at trial and on direct appeal, "since the same attorney might be reluctant to raise issues on appeal that might suggest his ineffectiveness at trial." *Id.* However, this risk is not present when one attorney represents the petitioner at trial and a different attorney represents the petitioner on appeal. That the two attorneys in this case both worked for the State of Illinois does not automatically suggest a conflict.[4] Barnhill's trial counsel and appellate counsel did not even work in the same office.[5] Had the appellate defenders genuinely been constrained from raising the ineffectiveness of the trial counsel, they would not have implicitly suggested such ineffectiveness by raising issues which the public defenders neglected to raise at trial, such as the judge's failure to ask Barnhill if any promises were made in exchange for his plea. We will not presume a conflict exists where none is demonstrated. *See Cuyler,* 446 U.S. at 347–48, 100 S.Ct. at 1717–18. Since the state appellate court found substantial compliance with Illinois Supreme Court Rule 402(b), under which the judge must inquire as to whether any promises were made to induce a guilty plea, trial counsel did not deprive Barnhill of effective assistance of counsel in the first instance. *See People v. Barnhill,* 188 Ill.App.3d 299, 303, 135 Ill.Dec. 627, 543 N.E.2d 1374 (1989).

■■ Second, Barnhill has not shown ineffectiveness on the part of appellate counsel. Ineffective assistance of appellate counsel may itself establish a cause for failure to present his claims of ineffective assistance of trial counsel. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986); *Balfour v. Haws,* 892 F.2d 556, 563 (7th Cir.1989). In order to prevail on this claim, though, Barnhill must establish that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Moreover, even an unreasonable error on the part of counsel will not warrant setting aside a judgment unless the outcome of the proceeding would have been different. *Id.,* at 691, 104 S.Ct. at 2066–67. In reviewing the actions of counsel, our presumption is that "the challenged action 'might be considered sound trial strategy.'" *Id.,* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Barnhill simply does not allege any facts which would overcome this presumption. The only action or omission Barnhill cites is appellate counsel's failure to call Barnhill's trial counsel and a member of the sheriff's office to testify on the Motion to Vacate Plea as to the promise Barnhill alleged they made to him in exchange for his plea. Usually, counsel's decision not to call a witness is a tactical choice not subject to review. *Cartee v. Nix,* 803 F.2d 296, 303 (7th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987). Moreover, since it is not established that the witnesses could offer useful testimony on the subject, Barnhill cannot claim prejudice.[6]

---

**4.** The Illinois Supreme Court has held that there is no per se conflict in representation by multiple public defenders. *See People v. Banks,* 121 Ill.2d 36, 117 Ill.Dec. 266, 269, 520 N.E.2d 617, 620 (1987).

**5.** Trial counsel, Mr. Carroll Owens, appears to work for the Public Defenders office of Franklin County, Illinois. Appellate counsel, however, worked in the Office of the State Appellate Defender for the Fifth Judicial District in Mount Vernon, Illinois.

**6.** Barnhill has also failed to show a fundamental miscarriage of justice that would allow us to

bypass the cause and prejudice standard. *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). The trial court engaged in a lengthy colloquy to ensure that Barnhill understood the consequences of his plea, that he was of sound mind and being, and that he was not compelled in any way to enter his plea. Each sentencing option was discussed and the possibility of serving time in a mental institution was not mentioned. Barnhill then admitted his guilt in open court and his testimony was corroborated by the police.

■ Finally, Barnhill's claim that he was deprived of effective assistance of counsel at the Illinois Supreme Court, which is not procedurally defaulted, fails on the merits. Counsel's petition for leave to appeal to the Illinois Supreme Court was restricted to the question of the constitutionality of the statute under which Barnhill was sentenced. The claims regarding the validity of Barnhill's plea and sentence had already been presented to the Court of Appeals and were rejected. Barnhill's counsel simply chose the issue which they believed was most likely to secure a hearing before the Illinois Supreme Court. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983)).

### B. Constitutionality of the Statute

■ Barnhill did preserve his claim in state court that he was sentenced under an unconstitutionally vague statute. The trial court sentenced Barnhill to natural life imprisonment on the basis of an Illinois statute which elevates punishment for an offense accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill.Rev.Stat. ch. 38, para. 1005–8–1(a)(1)(b) (1989). Barnhill argues that this type of language was held to be unconstitutionally vague by the Supreme Court in *Maynard v. Cartwright,* 486 U.S. 356, 364, 108 S.Ct. 1853, 1859, 100 L.Ed.2d 372 (1988). *Maynard* reinforced the Court's ruling in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), in which the Court "plainly rejected the submission that a particular set of facts surrounding a murder, however shocking they may be, were enough in themselves, and without some narrowing principle to apply to those facts, to warrant the imposition of the death penalty." *Maynard,* 486 U.S. at 363, 108 S.Ct. at 1859. Barnhill invites this court to extend *Maynard's* analysis to a case which does not involve the death penalty.

This court has once before refused to rely on the Supreme Court's holdings in death penalty cases to declare the statutory language at issue here to be unconstitutionally vague. In *Peebles v. Greer,* 739 F.2d 262 (7th Cir.1984), this court examined the exact same language which is before us now and concluded that the extended-term statute did not rise to a constitutional violation. We rejected the petitioner's argument that *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which found a statute that imposed a term of life imprisonment without parole for the offense of uttering a false check for $100 violated the Eighth Amendment, mandated applying *Godfrey* to a sentence of a term of years. *Peebles,* 739 F.2d at 264. *Solem* involved a sentence which was significantly disproportionate to the crime committed, a concern not present in *Peebles. Id.,* at 264. Therefore, since the concern was that the statute would allow courts to impose a sentence in an arbitrary and capricious manner, we found no authority to extend the Eighth Amendment's proscription against cruel and unusual punishment in death penalty cases to a sentence for a term of years. *Id.,* at 264.

We find no reason to stray from our decision in *Peebles.* The death penalty "is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Given this qualitative difference, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Zant v. Stephens,* 462 U.S. 862, 885–86, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983) (quoting *Woodson,* 428 U.S. at 305, 96 S.Ct. at 2991.) Thus, we will not extend the holdings in the *Godfrey* and *Maynard* line of cases to a statute authorizing the sentence of natural life imprisonment. We are convinced that the Illinois statute under which Barnhill was sentenced is not constitutionally vague.

### III.

For the reasons above, the decision of the district court is AFFIRMED.